Edward D. HEMAUER, and Deborah K.
Hemauer, Plaintiffs,

v.

ITT FINANCIAL SERVICES,
Defendant.

Civ. A. No. C88–0852L(J).

United States District Court,
W.D. Kentucky,
Louisville Division.

June 27, 1990.

Louis Rosenberg, Charity Wilson, UAW–FORD Legal Services Plan, Louisville, Ky., for plaintiffs.

Karl N. Victor, Jr., William T. Warner, Laura J. Ensor, Conliffe, Sandmann, Goreman & Sullivan, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This motion is before the court on Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment. The case arises under the Federal Truth–in–Lending Act (TILA), 15 USC 1601 *et seq.*, Regulation Z, 12 C.F.R. § 226.1 *et seq.*, and Indiana's Uniform Consumer Credit Code (Indiana Code), 24–4.5–3–301(2). Jurisdiction is proper under 15 U.S.C. 1640(e).

### I. FACTS

In response to a newspaper advertisement that offered loan assistance to consumers with poor credit, Plaintiff Edward Hemauer contacted Diversified Mortgage, Incorporated (DMI) in New Albany, Indiana and requested a loan for $10,000.00. He completed a loan application, was told that an "investor" would arrange a loan, and was instructed to call Defendant ITT Financial Services. He then completed a loan application at ITT and listed his house as security for the loan.

On December 10, 1987, Edward and Deborah Hemauer executed two documents. Both documents were entitled "Disclosure Statement, Note, and Security Agreement." One was dated December 10, 1987, and the other was dated December 11, 1987. The Notes contained the following information:

|  | 12/10/87 (# 2) | 12/11/87 (# 1) |
|---|---|---|
| AMOUNT FINANCED | $1,021.93 | 8,693.42 |
| FINANCE CHARGE | 641.93 | 16,510.93 |
| TOTAL PAYMENTS | 1,863.86 | 25,204.35 |
| ANNUAL PERCENTAGE RATE | 34.60% | 18% |
| INTEREST | obscured | 16,506.58 |
| PRINCIPLE AMOUNT | obscured | 8,693.42 |

|                                    | 12/10/87<br>(# 2) | 12/11/87<br>(# 1) |
|------------------------------------|------------------:|------------------:|
| ITEMIZATION OF THE AMOUNT FINANCED |                   |                   |
| Amount given to you directly       | 100.98            | 6,140.49          |
| Amount paid on your account        | 0.00              | 909.43            |
| Amount paid to others on your behalf | blank           | blank             |
| Filing Fee                         | 0.00              | 10.50             |
| Custt Additional                   | 609.00            |                   |
| Fidelity Finance                   |                   | 1,448.00          |
| Title Insurance                    | 0.00              | 185.00            |
| Credit Life                        | 54.03             | 0.00              |
| Credit Disability                  | 62.92             | 0.00              |
| Property                           | 0.00              | 0.00              |
| Auto Comp. & Comp.                 | 0.00              | 0.00              |
| Lenders (appraisal)                | 195.00            | 0.00              |

---

The Hemauers were also given a check and informed that it was DMI's finder's fee. They were instructed to endorse it and return it to ITT who would then forward it to DMI. Although they claimed that they did not agree to pay DMI a service fee, they endorsed the check believing that it was a condition to receiving the loan. On December 17, 1987, they returned to ITT and received $6,140.49.

The Hemauers allege that ITT violated TILA and the Indiana Uniform Consumer Credit Code by failing to make all required disclosures in a clear and conspicuous manner, to properly group together all relevant disclosures, to properly itemize the brokerage service fee of DMI, and to accurately disclose the annual percentage rate, the amount financed and the finance charge. Because the court finds that ITT violated TILA and the Indiana Code in failing to make all required disclosures in a clear and conspicuous manner and to properly group together all relevant disclosures, the remainder of the allegations are not addressed.

## II. DISCUSSION

█ Regulation Z requires that the disclosures must be made clearly and conspicuously and that they shall be grouped together.[1] In this case there was only one request for a loan, but two loan agreements were prepared. Both loan agreements related to the same transaction and

were executed on the same day. However, the cost of obtaining the loan was split between the two agreements at the initiative of ITT. ITT argues that there were two loan transactions, the latter a refinancing of the former.

█ Although a creditor may make the required disclosures in any manner as long as they reflect TILA's purpose, to justify a departure from TILA the creditor must show that the departure enhances the clarity of the disclosure, facilitates customer comprehension or is required because of the impracticability of any other arrangement. *Allen v. Beneficial Finance Co. of Gary, Inc.*, 531 F.2d 797, 802 (7th Cir.1976). A loan agreement violates TILA if it is drafted to obscure the relevant terms of the agreement, rather than to explain the terms in clear and meaningful language. *Burton v. Public Finance Corp. of Akron No. 3*, 657 F.2d 842 (6th Cir.1981).

The Official Staff Commentary to Regulation Z, § 226.20(a)(1) states that "[w]hether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation based on the parties contract and the applicable law." To determine whether the agreement was one or two transactions, one looks to the circumstances surrounding the extension of credit. *Adiel v. Chase Fed.*

---

**1.** 226.17 General disclosure requirements.
  (a) Form of disclosure. (1) The creditor shall make the disclosures required by the subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, ...

*Sav. and Loan Ass'n,* 586 F.Supp. 866 (S.D.Fla.1984).

It is obvious that the Hemauers sought only one loan. They did not seek a loan on 12/10/87 and then decide to refinance the loan the next day. ITT's argument that the 12/11/87 Loan Agreement was a refinancing is not realistic given the circumstances. Even though the 12/11/87 Loan Agreement complies with the requirements of a refinancing, it is not a refinancing in the true spirit of TILA. The charges surrounding the one loan sought by the Hemauers were split between the two documents. Although these charges realistically related to the same transaction, they were not grouped together.

The Hemauers allege ITT split the transaction so that they could not rescind. TILA provides that "[i]n a credit transaction in which a security interest ... will be retained ... in a consumer's principal dwelling, each consumer ... shall have the right to rescind the transaction." [2] In this case only the 12/11/87 Note was rescindable because it was secured by the Hemauers principal dwelling. Therefore, if the Hemauers had chosen to rescind the 12/11/87 agreement they would still be required to repay the 12/10/87 loan. This is an effective penalty for exercising their right to rescind.

■ TILA is designed to make credit contract terms comprehensible; *Williams v. Blazer Financial Services, Inc.,* 598 F.2d 1371, 1374 (5th Cir.1979); and to prevent predatory creditor practices. *James v. Ford Motor Credit Co.,* 638 F.2d 147 (10th Cir.1980). It must be liberally construed to effectuate this purpose. *Id.* Ambiguities in the disclosure are construed against the lender; *Sneed v. Beneficial Co.*

*of Hawaii,* 410 F.Supp. 1135 (D.Ha.1976); and strictly in favor of the consumer. *Frazee v. Seaview Toyota Pontiac, Inc.,* 695 F.Supp. 1406 (D.Conn.1988).

Summary Judgment is appropriate in TILA cases because of the record produced by the loan documents. *Pearson v. Easy Living, Inc.,* 534 F.Supp. 884 (S.D.Oh. 1981). When the disclosure is so clearly confusing, misleading, and inaccurate that it cannot reasonably be disputed, summary judgment for the plaintiff is appropriate. *Griggs v. Provident Consumer Discount Co.,* 503 F.Supp. 246 (E.D.Penn.1980).

### III.   DAMAGES

■ Any creditor who fails to comply with the requirements of TILA is liable for any actual damage or twice the amount of any finance charge in connection with the transaction not greater than $1,000.00. Statutory damages are available merely on proof of violation, proof of actual damages is not required. *Baker v. G.C. Services Corp.,* 677 F.2d 775 (9th Cir.1982). The Indiana Uniform Consumer Credit Code 24–4.5–3–301(2) incorporates by reference TILA's disclosure requirements but retains its own penalty provisions at Indiana Code 24–4.5–5–203. It provides that any creditor that violates the disclosure provisions is liable for twice the amount of the finance charge in connection with the transaction not to exceed $1,000.00. Both the federal and state statutes allow the recovery of attorney's fees.

■ Remedies provided by the state and federal statutes are not duplicative but cumulative. Where a creditor has violated both state and federal law, they will be liable for damages under both. *Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092

---

**2.**   Section 226.23 Right of Rescission
(a) Consumer's Right to Rescind. (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.

.     .     .     .     .

(c) Delay of creditors performance. Unless a consumer waives the right of rescission under

paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.

.     .     .     .     .

(5th Cir.1978). When a husband and wife are jointly and severally liable for the entire debt each is a borrower and each is entitled to a penalty if there is a statutory violation. *Id.*

For the purposes of assessing damages the court finds that there were two loan transactions and that both Edward and Deborah Hemauer were individually liable on each transaction. Since the loan transaction was split at Defendant's initiative, Defendant cannot argue now that there was one transaction. Since the finance charges on the Notes were $641.93 and $16,510.93, respectively, double the finance charge exceeds the statutory maximum under both federal and state law. Therefore, the statutory penalty of $1,000.00 is appropriate. Accordingly, Edward Hemauer is entitled to damages of $1,000.00 under TILA and $1,000.00 under the Indiana Code for the transaction of 12/10/87. He is also entitled to statutory damages of $1,000.00 under both TILA and the Indiana Code for the transaction of 12/11/87 for a total of $4,000.00. Likewise, Deborah Hemauer is entitled to both federal and state statutory damages for each transaction for a total of $4,000.00.

For these reasons, JUDGMENT is GRANTED in favor of the Hemauers, and ITT's Motion for Summary Judgment is DENIED.